IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XEROX CORPORATION,<br>    *Plaintiff*,<br><br>v.<br><br>SMS PRODUCTIONS, INC.,<br>    *Defendant*. | Civil Action No. ELH-21-1606 |

## MEMORANDUM OPINION

On June 30, 2021, plaintiff Xerox Corporation ("Xerox") filed suit against defendant SMS Productions, Inc. ("SMS"). ECF 1 (the "Complaint"). The Complaint is accompanied by two exhibits. *See* ECF 1-1; ECF 1-2. The suit is rooted in SMS's alleged failure to pay fees for copiers, supplies, and maintenance, in the amount of $234,397.03. ECF 1, ¶¶ 4-7. Jurisdiction is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a). *See* ECF 1, ¶¶ 1-3.

The Complaint contains three counts. In "Count I," plaintiff alleges breach of contract with respect to two lease agreements. "Count Two" asserts unjust enrichment. And, "Count Three" alleges quantum meruit.[1]

SMS was served on August 3, 2021. ECF 7. But, SMS has neither appeared in the case nor filed a response to plaintiff's Complaint. *See* Docket.

Now pending is plaintiff's "Request For Entry Of Judgment Against Defendant SMS Productions, Inc." ECF 15 (the "Motion"). The Motion is supported by three exhibits. *See* ECF 15-1; ECF 15-2; ECF 15-3. In the Motion, Xerox requests the damages stated in the Complaint, as well as accrued interest, in the total amount of $286,876.28. ECF 15, ¶ 4. It also seeks attorneys'

---

[1] Xerox labeled the first Count with a Roman numeral.

fees, in the amount of $3,187.00, post-judgment interest, and the costs associated with this proceeding. *Id.* at 2.

No hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion, without prejudice.

## I. Background

### A.

"On or about April 21, 2016 and August 3, 2018," Xerox agreed to provide SMS with "copiers and related equipment, supplies and maintenance in exchange for payments extending over an extended term of months." ECF 1, ¶ 4. The parties formalized their relationship in two contractual agreements. *See* ECF 1-1 (the "Lease Agreement"); ECF 1-2 (the "Maintenance Agreement"). Plaintiff refers to ECF 1-1 and ECF 1-2 collectively as the "Leases" or the "Lease Agreements." ECF 1, ¶ 5. However, the Lease Agreement is unsigned. *See id.*

The Lease Agreement includes an "Order Express Cover Sheet," dated April 21, 2016. ECF 1-1 at 1. It lists the "Customer Name" as SMS and describes the "Cover Sheet Purpose" as "submitting a New Order." *Id.* SMS's delivery contact is listed as Steve Slovon. *Id.*; *see id.* at 2. And, the second page of the Lease Agreement provides SMS's installation and billing address as 10555 Guilford Rd., Jessup, MD 20794-9119. *Id.* at 2.

The second page of the Lease Agreement provides that SMS sought to lease two pieces of Xerox equipment for a period of sixty months, with a "Requested Install Date" of March 28, 2016. *Id.*[2] The equipment is identified as "XC1000I" and "EX1000I" (the "Equipment"). *Id.* The Lease Agreement also indicates a total monthly minimum payment of $3,840.71 for the leasing and

---

[2] Thus, the "Requested Install Date" predates the date listed on the "Order Express Cover Sheet."

maintenance of the Equipment. ECF 1-1 at 2.[3] Thus, over the sixty-month term, the value of the Lease Agreement was approximately $230,442.60.

The Lease Agreement also includes terms that govern the relationship between the parties. *See id.* at 3-5. For instance, the Lease Agreement provides that if SMS is "not totally satisfied with any Xerox-brand Equipment delivered under this Agreement, Xerox will, at [SMS's] request, replace it without charge with an identical model, or at Xerox's option, with Xerox Equipment with comparable features and capabilities." *Id.* at 3, ¶ 1.

Additionally, the Lease Agreement includes a provision titled "MAINTENANCE SERVICES." *Id.* ¶ 5. It states: "Xerox (or a designated servicer) will keep the Equipment in good working order[.]" *Id.* And, if Xerox fails to do so, SMS may require Xerox, without charge, to "replace the Equipment with an identical model or, at Xerox's option, another model with comparable features and capabilities." *Id.*

Further, the Lease Agreement specifies that it is "valid when accepted by Xerox." *Id.* at 4, ¶ 10. And, the "Term for each unit of Equipment will commence upon: (i) the delivery of customer-installable Equipment; or (ii) the installation of Xerox-installable Equipment . . . and will continue for the number of full calendar months shown as 'Lease Term' on the face of this Agreement." *Id.*

The Lease Agreement also contains several provisions regarding the terms according to which SMS must tender payment to Xerox. It establishes that "[p]ayment must be received by Xerox within 30 days after the invoice date." *Id.* ¶ 12. And, another provision of the Lease Agreement, titled "SEPARATELY BILLED MAINTENANCE," provides: "If a Minimum

---

[3] The minimum monthly payments did not include minimum printing costs associated with the Equipment.

Payment is included in Maintenance Plan Features for an item of Equipment, the Minimum Payment for Maintenance Services will be billed separately." ECF 1-1 at 4, ¶ 11.

Paragraph 18 of the Lease Agreement is titled "DEFAULT & REMEDIES". *Id.* ¶ 18. It specifies that SMS is in default under the Agreement under two conditions. *Id.* First, it provides that SMS is in default if "Xerox does not receive any payment within 15 days after the date it is due[.]" *Id.* Second, it specifies that SMS is in default if it "breach[es] any other obligation in this or any other agreement with Xerox." *Id.*

And, in the event of default, the Lease Agreement states, *id.*:

> If you default, Xerox may, in addition to its other remedies (including cessation of Maintenance Services), remove the Equipment at your expense and require immediate payment, as liquidated damages for loss of bargain and not as a penalty, of: (a) all amounts then due, plus interest from the due date until paid at the rate of 1.5% per month; (b) the Minimum Payments (less than Maintenance Services and Consumable Supplies components thereof, as reflected on Xerox's books and records) remaining in the Term, discounted at 4% per annum; (c) the applicable Purchase Option; and (d) all applicable Taxes. You will pay all reasonable costs, including attorneys' fees, incurred by Xerox to enforce this Agreement. If you make the Equipment available for removal by Xerox within 30 days after notice of default, in the same condition as when delivered (reasonable wear and tear excepted), you will receive a credit for the fair market value of the Equipment as determined by Xerox, less any costs incurred by Xerox.

Of import here, the Lease Agreement also specifies: "This Agreement constitutes the entire agreement as to its subject matter . . . and will be governed by the laws of the State of New York (without regard to conflict-of-law principles)." *Id.* at 5, ¶ 30. And, "[i]n any action to enforce this Agreement, the parties agree (a) to the jurisdiction and venue of federal and state courts in Monroe County, New York, and (b) to waive their right to a jury trial." *Id.*

The Maintenance Agreement was signed by Mr. Slovon on August 3, 2018. ECF 1-2 at 2. It reflects SMS's installation and billing address as 1340 Charwood Rd., Hanover, MD 21076-3117. *Id.*

The Maintenance Agreement appears to include information pertaining to services that Xerox subsequently provided to SMS. *See* ECF 1-2 at 1-2. It also includes an "Order Express Cover Sheet," dated August 3, 2018, which specifies the "Customer Name" as SMS. *Id.* at 1 (emphasis omitted).[4] It indicates that the "Cover Sheet Purpose" is "submitting a New Order." *Id.*

The second page of the Maintenance Agreement provides that SMS requested maintenance for two pieces of equipment: "V3100" and "EX3100." *Id.* at 2. With respect to V3100, SMS agreed to pay a minimum monthly payment of $213.00, over a term of sixty months, totaling $12,780.00. *Id.* As to EX3100, Xerox did not charge SMS a fee. *Id.* Thus, the total value of the Maintenance Agreement was $12,780.00.

It is not clear whether the terms included in the Lease Agreement also govern the Maintenance Agreement. Pertinent here, the third page of the Maintenance Agreement appears to be a scanned version of the second page of the Lease Agreement, arguably incorporating it. *Compare* ECF 1-2 at 3 *with* ECF 1-1 at 2. However, the quality of this page is too distorted to enable the Court to evaluate its contents.

In any event, Xerox asserts: "Defendant has been and remains in default under the terms and conditions of the Leases for, among other reasons, its failure to pay the amounts due under the Lease Agreements. Because of these defaults, the entire outstanding principal balance remaining is accelerated." ECF 1, ¶ 5; *see also* ECF 1-1 at 4, ¶ 18 (specifying that in the event of default, Xerox may require, among other things "immediate payment . . . all amounts then due plus interest from the due date until paid at the rate of 1.5% per month" and "the Minimum Payments . . .

---

[4] The "Order Express Cover Sheet" lists the "Delivery Contact Name" as "Michele." ECF 1-2 at 1.

remaining in the Term, discounted at 4% per annum").[5]  And, plaintiff claims that, "[a]s of June 17, 2021, there still remains [an] outstanding balance due by Defendant of $234,397.03, plus interest, accruing late charges, attorneys' fees, court costs and other amounts due on transactions between the parties."  ECF 1, ¶ 6.  Xerox also asserts that, despite its "demands upon Defendant for payment, Defendant has failed and refused to pay the amounts claims [sic] herein which remain due, payable and past due."  *Id.* ¶ 7.

**B.**

On August 27, 2021, approximately two months after initiating suit, Xerox filed a document with the Court, reflecting that Xerox submitted a request to the Maryland State Department of Assessments & Taxation ("SDAT") to effect service on SMS, in accordance with State and federal law.  ECF 7 (the "Acknowledgment of Service"); *see* Md. Rule 2-124(o)(iii) (permitting substituted service on a corporation or other business entity required to have a resident agent, via service on SDAT, where "two good faith attempts on separate days to serve the resident agent have failed"); *see also* Fed. R. Civ. P. 4(h)(1)(A), (e)(1) (permitting service on a corporation or other business entity by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located").

The Acknowledgment of Service is dated August 18, 2021.  ECF 7 at 1.  It confirmed that on August 3, 2021, SDAT received a request from plaintiff to effect service on defendant.  *Id.* at 1-2.  It also indicated that SDAT would "forward" the relevant documents to SMS within "7 to 10 business days from receipt."  *Id.* at 2 (emphasis omitted).[6]  Thus, pursuant to Fed. R. Civ. P.

---

[5] Plaintiff does not identify the "other reasons" that forced SMS into default.

[6] The Acknowledgment of Service listed the same address for SMS as specified in the Lease Agreement.  See ECF 7 at 2; ECF 1-1 at 2.

12(a)(1)(A), the deadline for defendant to respond to the Complaint was August 24, 2021.

However, no further action transpired in the weeks that followed. *See* Docket. Accordingly, by Order of September 9, 2021 (ECF 8), I asked plaintiff to file a status report, due by September 23, 2021.

Plaintiff responded on September 10, 2021. ECF 9. Xerox stated: "After repeated attempts to serve the Resident Agent for SMS Productions, Xerox received an Affidavit of Non-Service from its private process server." *Id.*[7] Accordingly, it provided SDAT with "copies of the Complaint, Summons, and accompanying exhibits" on August 3, 2021. *Id.* And, on August 18, 2021, Xerox received the Acknowledgment of Service, which it docketed with the Court on August 27, 2021. *Id.*

Further, plaintiff specified that as of September 10, 2021, it had not "received any response from SMS Productions or a representative." *Id.* Xerox also indicated that because SDAT stated the documents necessary to effect service would not be forwarded to SMS until "7 to 10 days from receipt", it intended to "err on the side of caution." *Id.* Accordingly, it stated that "should no response be filed within sixty days from the date of service on SDAT (which is the time period permitted to answer in the Maryland State Courts), it [would] request a default." *Id.*; *see* Md. Rule 2-321(b)(3) ("A person who is required by statute of this State to have a resident agent and who is served with an original pleading by service upon [SDAT], . . . shall file an answer within 60 days after service.").

Nonetheless, to date, defendant has not responded to the Complaint. *See* Docket.[8]

---

[7] Xerox did not provide the Court with a copy of the Affidavit. Nor did it otherwise document any of its attempts to effect service on SMS.

[8] Pursuant to Fed. R. Civ. P. 4(e)(1), federal law allows for a plaintiff to effect service on a defendant in accordance with a method permitted by State law. But, "Rule 12(a) governs defendant's time to file an answer 'unless another time is specified by this rule or a federal statute

Accordingly, on October 21, 2021, plaintiff requested an order of default (ECF 10), which the Clerk entered on October 27, 2021.  ECF 11 (the "Order of Default").  The Clerk also mailed defendant notice of the Order of Default.  ECF 12 (the "Notice").  The Notice advised that SMS had thirty days from the date of entry of the Order to move to vacate the Order.  *See id.*

The Notice was mailed to 10555 Guilford Rd., Jessup, MD 20794-9119, the address identified in the Complaint.  *See* ECF 13; *see also* ECF 1.  This address is the same address associated with SMS on the Lease Agreement.  *See* ECF 1-1 at 2.  But, the Notice was returned as undeliverable on November 16, 2021.  ECF 13.  As mentioned, a different address, 1340 Charwood Rd., Hanover MD, 21076-3117, was associated with SMS on the Maintenance Agreement.  ECF 1-2 at 2.  Plaintiff has not explained the discrepancy.

The Motion followed on March 31, 2022.  ECF 15.  Xerox seeks an award of damages, in the total amount of $286,876.28.  *Id.* ¶ 4.  According to plaintiff, this amount constitutes the balance owed, $234,397.03, as well as all "accrued interest at the rate of 18% (consistent with the parties' contracted rate[)] . . . through the date of March 30, 2022."  *Id.*[9]

Plaintiff submitted an exhibit to demonstrate how it calculated the claim for interest.  *See* ECF 15-1 (the "Worksheet").  Pertinent here, the Worksheet indicates that interest began to accrue

---

. . . .'" *Md. Elec. Indus. Health Fund v. Valley Sun Indus. Grp., Inc.*, 310 F.R.D. 273, 274 (D. Md. 2015) (quoting Fed. R. Civ. P. 12(a)(1)) (emphasis omitted).  In other words, "even if, as permitted by Federal Rule of Civil Procedure 4(e), the defendant is served pursuant to a state law method of service and the state law provides a longer time in which to answer," Rule 12(a) is controlling.  *Beller & Keller v. Tyler*, 120 F.3d 21, 25-26 (2d Cir. 1997); *see Finishmaster, Inc. v. Blue Lake Motors, Inc.*, CV 17-4389 PA (SKx), 2018 WL 6061195, at *4 (C.D. Cal. May 11, 2018) (finding the same).  And, under Fed. R. Civ. P. 12(a)(1)(A), defendants are afforded twenty-one days to respond to the Complaint upon service.

[9] As mentioned, the Lease Agreement provides that, in the event of default, interest will accrue on the outstanding principal at the monthly rate of 1.5%.  ECF 1-1 at 4, ¶ 18.  But, in context, plaintiff's assertion regarding an interest rate of 18% appears to describe the same interest rate in per annum terms.

under the terms of the Lease Agreement on December 31, 2020. ECF 15-1 at 1. Accordingly, given an outstanding balance of $234,397.03, plaintiff calculated that SMS incurred interest at the daily rate of approximately $115.59. *Id.* at 1-2. And, over the course of the 454 days between December 31, 2020, and March 30, 2022, Xerox determined that SMS incurred interest in the total amount of $52,479.25. *Id.*

In addition, Xerox asks the Court to award $3,187.00 in attorneys' fees. ECF 15, ¶ 5. In support of the request, Xerox provided an "Affidavit In Support of Attorneys' Fees," authored by Donald Walsh, plaintiff's counsel in this case. ECF 15-2 (the "Fees Affidavit"). Mr. Walsh avers: "I have reviewed all attorney fees and expenses in this matter including the rate charged, the hours expended, and costs incurred. Through March 25, 2022, the attorneys' fees and expenses incurred in pursuing this matter total **$3,037.00**." *Id.* ¶ 5.[10] According to Mr. Walsh, "the amounts charged and the entire total sum in attorney's fees and costs were reasonable, fair and necessary to achieve the result obtained here." *Id.* Plaintiff also provided copies of the billings of counsel in connection with litigating the Motion. *See* ECF 15-3.

Mr. Walsh also notes that the requested fees constitute "less than 5% of the principal balance due which, when considering the additional time and expense that will be charged by its legal professionals to Plaintiff in these proceedings, will result in an award of attorneys' fees that is far less than what Plaintiff actually expends in order to prosecute this action to its conclusion." ECF 15-2, ¶ 6. To that end, Mr. Walsh avers: "Prosecution will undoubtedly require, at a minimum, the recordation of any judgment entered herein in the State of Maryland and pursuit of

---

[10] This figure varies slightly from the $3,187.00 requested in the Motion. *See* ECF 15, ¶ 5. But, the billings submitted to the Court reflect that plaintiff's counsel charged Xerox an additional $150.00 on March 30, 2022. *See* ECF 15-3 at 6. Thus, in conjunction with the $3,087.00 previously charged, the total fees amount to $3,187.00.

post-judgment enforcement proceedings in this state." ECF 15-2, ¶ 6.

And, the Fees Affidavit provides that "the attorneys' fees billings submitted do not include the work of post-judgment enforcement proceedings which [Mr. Walsh] anticipate[s] will be necessary in order for an attempt to be made to collect the amounts due from the Defendant." *Id.* ¶ 7. Consequently, Mr. Walsh avers that "it would be reasonable, fair and necessary to compensate Plaintiff for this additional attorneys' fees expense that it must necessarily pay in order to recover the monies the Court has declared it is entitled to collect." *Id.* And, "[t]o not compensate Plaintiff thus is to deny Plaintiff the full extent it has been damages by the Defendants' [sic] breach of their [sic] obligations . . . ." *Id.*

## II. Standard of Review

### A.

Rule 55(b) of the Federal Rules of Civil procedure governs default judgments. In particular, Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation." [11] But, "[a] plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise the complaint must be supported by affidavit or documentary evidence." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (Grimm, M.J.).[12]

---

[11] If the sum is not certain or ascertainable through computation, the court looks to Rule 55(b)(2) ("The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.").

[12] Judge Grimm authored *Monge* when he served as a United States Magistrate Judge. He now serves as a United States District Court Judge.

In the Motion, plaintiff requests, *inter alia*, an award of attorneys' fees. ECF 15 at 2. Under Fed. R. Civ. P. 54(d)(2)(B), a claim for attorney's fees must, among other requirements, specify "the grounds entitling the movant to the award" and "state the amount sought or a fair estimate of it" in the motion.

The request here is rooted in a provision of the Lease Agreement that provides that, in the event of SMS's default, Xerox is entitled to "all reasonable costs, including attorneys' fees, incurred by Xerox to enforce this Agreement." ECF 1-1 at 4, ¶ 18. But, "it has been held that the need to fix 'reasonable' attorneys' fees prevents the clerk from entering a judgment under Rule 55(b)(1).[ ]" 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (4th ed. Apr. 2022 Supp.) ("Wright & Miller"). Accordingly, in this circumstance, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Entry of default judgment under Rule 55(b)(2) "is left to the discretion of the court." *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). But, the Fourth Circuit has a "strong policy favoring the disposition of cases on the merits . . . ." *Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 229 (4th Cir. 2019) (discussing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)), *cert. denied*, ___U.S.___, 139 S. Ct. 2762 (2019); *see Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013). However, the policy is not absolute. Thus, default judgment "'is appropriate when the adversary process has been halted because of an essentially unresponsive party.'" *Garnier-Thiebault, Inc. v. Castello 1935 Inc.*, SDT-17-3632, 2019 WL 6696694, at *1 (D. Md. Dec. 6, 2019) (Thacker, J.) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013)); *see Lawbaugh*, 349 F. Supp. 2d at 421.

In the case of a default judgment, all of plaintiff's factual allegations, other than those pertaining to damages, are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (stating that the court accepts as true the well pleaded factual allegations in the Complaint as to liability). But, the court must determine whether the undisputed factual allegations constitute a legitimate cause of action. *Id.* at 780-81.

If the court is satisfied that liability has been established, it must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. Allegations "relating to the amount of damages" are not deemed admitted based on a defendant's failure to respond to a suit. Fed R. Civ. P. 8(b)(6); *see Monge*, 751 Supp. 2d at 794; *Trs. Of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *1 (W.D. Va. June 30, 2009) ("Upon default judgment, Plaintiff's factual allegations are accepted as true for all purposes excluding determination of damages.").

Rather, the court must make an independent determination regarding allegations as to damages. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). However, the court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trustees of the Nat'l Asbestos Workers*

*Pension Fund v. Ideal Insulation*, Inc., ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *Monge*, 751 F. Supp. 2d at 795 (same); *Pentech Fin. Servs., Inc.*, 2009 WL 1872535, at *2 (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment because plaintiff submitted affidavits and records establishing the amount of damages); *JTH Tax, Inc. v. Smith*, Civil No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See In re Genesys Data Techs, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) ("When a Complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages."). This is meant to enable the defendant to decide whether to expend the resources to defend the action. *Monge*, 751 F. Supp. 2d at 796.

**B.**

When evaluating a state law claim brought under the Court's diversity jurisdiction, the court must apply the substantive law of the forum state, including as to choice of law. *See, e.g.*, *Nash v. Montgomery Cty.*, GJH-20-1138, 2021 WL 1222874, at *7 n.7 (D. Md. Mar. 31, 2021); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008). Here, the forum state is Maryland.

As to contracts, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g.*, *Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). "In Maryland, choice of law provisions in contracts are enforceable unless the choice of law jurisdiction has no substantial relationship to the transaction, or there is a fundamental policy difference in the laws of another jurisdiction with a more substantial interest in the parties or the transaction." *United States for use & benefit of Tusco, Inc. v. Clark Constr. Grp.*, 235 F. Supp. 3d 745, 752 n.9 (D. Md. 2016) (citing *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 921 A.2d 799, 803-05 (2011)); *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187.

In this case, the Lease Agreement specifies that it shall be governed by New York law. ECF 1-1 at 5, ¶ 30. Plaintiff does not cite to any State's law in either the Complaint or Motion. Nor does it otherwise signal that any State's law is relevant to its suit. Therefore, in the absence of any indication suggesting otherwise, I shall apply New York law in resolving the Motion.

### III. Discussion

### A.

I begin with the issue of service. As mentioned, plaintiff explained in a status report that, "[a]fter repeated attempts to serve the Resident Agent for SMS Productions, Xerox received an Affidavit of Non-Service from its private process server." ECF 9. At that time, plaintiff "sent copies of the Complaint, Summons, and accompanying exhibits" to SDAT, in accordance with Fed. R. Civ. P. 4(h)(1)(B) and Maryland Rule 2-124(o). ECF 9; *see* ECF 7 (Acknowledgment of

Service); *see also* ECF 10, ¶ 3 ("After two good faith attempts to serve the resident agent for Defendant failed, on August 3, 2021, Defendant SMS was served by process server by delivering of all filings to date to [SDAT].").

Maryland law allows a plaintiff to effect service on a corporation via substituted service on SDAT, where "two good faith attempts on separate days to serve the resident agent have failed." Md. Rule 2-124(o); *see also* Fed. R. Civ. P. 4(h)(1)(A), (e)(1) (permitting service on a corporation or other business entity by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located").  However, plaintiff has failed to provide the Court with any documentation corroborating the "good faith" efforts it made before serving defendant via SDAT. *See* Docket.  In my view, the unsworn contentions of plaintiff's counsel are insufficient to establish that it was entitled to serve SMS in this manner.

Moreover, "[i]t is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or default judgment may be entered against a defendant." *Md. State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996).  This is because, without effective service, the Court is "'without jurisdiction over the defendant.'"  *Id.* (quoting *Fed. Deposit Ins. Corp.  v. Spartan Mining Co., Inc.*, 96 F.R.D. 677, 680 (S.D.W.V. 1983).

Accordingly, I am of the view that, in the absence of evidence demonstrating that plaintiff made two good faith attempts to serve defendant before effecting service via SDAT, such as an affidavit from plaintiff's private process server, I am precluded from awarding a default judgment.

In any event, assuming, *arguendo*, that service was effective on SMS, plaintiff has failed to provide the Court with adequate documentation with respect to its request for damages.

**B.**

As mentioned, the Complaint lodges claims for breach of contract, unjust enrichment, and quantum meruit. ECF 1, ¶¶ 4-11. As to plaintiff's claim for breach of contract, New York law provides that "there are four elements to a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996).

Regarding plaintiff's claim for unjust enrichment, New York law specifies that "[t]he basis of [such a claim] is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, *8-9 (2012) (citations omitted). And, to state a claim for quantum meruit, a plaintiff must plead "'(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 509 (2d Cir. 2009) (quoting *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir. 2005) (Sotomayor, J.)).

Xerox alleges that plaintiff and defendant entered a contract; that plaintiff complied with its obligations under the contract by providing the contracted-for items and services; and that defendant failed and refused to make full payment of the agreed upon amount. ECF 1, ¶¶ 4-6. Plaintiff's allegations are supported by copies of the contractual agreements entered by the parties. *See* ECF 1-1; ECF 1-2. And, given the posture of the case, plaintiff's allegations are deemed

admitted. Fed. R. Civ. P. 8(b)(6). Assuming, for present purposes, that service was proper, I am satisfied that plaintiff has adequately demonstrated SMS's liability.[13]

As to damages, plaintiff asserts that, pursuant to the terms of the Lease Agreement and the Maintenance Agreement, defendant is liable for the principal balance owed, $234,397.03, as well as "accrued interest at the rate of 18%." ECF 15, ¶ 4. As mentioned, the Worksheet provides that defendant accrued interest beginning on December 31, 2020, at the rate of 18%, for 454 days. ECF 15-1. Thus, given an outstanding balance of $234, 397.03, plaintiff calculates that defendant has accrued interest in the total amount of $52,479.25. *Id.* But, the documentation provided in support of plaintiff's assertions do not provide support for the amount of the outstanding balance or the accrued interest.

To be sure, the Complaint alleges a breach by SMS of its payment obligation. But, that does not suffice to establish the amount of damages.

The Lease Agreement provides that, in the event of SMS's default, Xerox may "require immediate payment . . . of: (a) all amounts then due, plus interest from the due date until paid at the rate of 1.5% per month[.]" ECF 1-1 at 5, ¶ 18.[14] Plaintiff alleges that the sum of $234,397.03

---

[13] Under New York law, "a claim for quantum meruit or unjust enrichment is precluded when a valid contract governing the same subject matter exists between the parties[.]" *Wilk v. VIP Health Care Services, Inc.*, 10 Civ. 5530 (ILG) (JMA), 2012 WL 560738, at *5 (E.D.N.Y. Feb. 21, 2012) (citing *Mid–Hudson Catskill Rural Migrant Ministry, Inc*, 418 F.3d at 175); *see also In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (explaining that unjust enrichment "'is an equitable claim that is unavailable where an adequate remedy at law exists.'") (*quoting Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010)).

Thus, in the event that service was proper and plaintiff has established a valid claim from breach of contract, it may not also recover for its claims of unjust enrichment and quantum meruit, as each of plaintiff's three claims are predicated on the same underlying allegations.

[14] As mentioned, the Lease Agreement characterizes the interest rate in monthly terms, whereas the Motion presents it in per annum terms. But, the rates are equivalent.

is the principal balance owed. But, Xerox did not include any documentation to support the claim. Indeed, Xerox did not even allege the date or the period when SMS breached the contract or defaulted under the Lease Agreement and the Maintenance Agreement. Moreover, Xerox has not presented any evidence to demonstrate that interest began to accrue on December 31, 2020.

Therefore, I shall deny the Motion, without prejudice to plaintiff's right to renew the arguments contained therein, supplemented by necessary documentation. Given this result, I shall also deny the Motion with respect to plaintiff's request for attorneys' fees, without prejudice to plaintiff's right to renew the request.

### IV. Conclusion

In light of the foregoing, I shall DENY the Motion, *without prejudice* to plaintiff's right to renew the Motion with the appropriate, supplementary material specified above.

Further, I shall instruct the Clerk to mail a copy of the Notice, the Motion, this Memorandum Opinion, and the accompanying Order to defendant at the following addresses: 10555 Guilford Rd., Jessup, MD 20794-9119 and 1340 Charwood Rd., Hanover, MD 21076-3117.

An Order follows.

Date: June 3, 2022                                    /s/
                                                     Ellen Lipton Hollander
                                                     United States District Judge